UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. BALDEV SINGH MULTANI, *Defendant*. | CASE NO. 2:19-cv-01789-BJR  ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

## I.   INTRODUCTION

Before the Court is Defendant Baldev Singh Multani's Motion to Dismiss the United States' Complaint seeking his denaturalization. Def.'s Mot. to Dismiss, Dkt. No. 18 ("Mot."). Having reviewed the Motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will deny the Motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

In reviewing the facts of the case, the Court adheres to the general principle that on a motion to dismiss all facts are presumed in favor of the non-moving party. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

1

According to the United States, Defendant originally entered the country at Miami International Airport from his native India as a stowaway on September 26, 1992 under the name Baldev Singh. Compl., Dkt. No. 1 ¶ 8. Under that name, the United States alleges Defendant went through deportation proceedings, including a failed asylum application, and was ordered deported pursuant to the order of an immigration judge which became final on February 14, 1994. *Id.* ¶¶ 9–42. The United States claims Defendant, as Baldev Singh, never left the country after he was ordered to do so, having been paroled into the United States pending his deportation proceedings. *Id.* ¶¶ 16, 43. Defendant, however, claims he is not Baldev Singh and that those deportation proceedings are unrelated to him. Mot. at 2–3.

According to the United States, after Defendant failed to leave the country, he filed a second asylum application under the name Baldev Singh Multani on October 5, 1994, claiming to have entered the United States on August 10, 1994 near Brownsville, Texas. Compl. ¶¶ 44–62. Before this asylum claim could be adjudicated, Defendant married a United States citizen on May 2, 1997, who filed a Petition for Alien Relative on his behalf. *Id.* ¶¶ 63–77. The United States granted the petition on October 21, 1998. *Id.* ¶ 78. Defendant subsequently applied first for legal permanent residence status and then naturalization, and both applications were granted. *Id.* ¶¶ 79–118. On February 14, 2006, Defendant became a United States citizen. *Id.* ¶ 119. He now lives in Washington State with his wife and children. *Id.* ¶ 4; Mot. at 5.

On November 4, 2019, the United States initiated the present civil action under 8 U.S.C. § 1451(a) (Revocation of Naturalization) seeking to revoke Defendant's naturalization on the grounds that he concealed material facts and made willful misrepresentations in obtaining his status, having lied in his applications about his previous deportation order. *See generally* Compl.,

Dkt. No. 1. Presently before the Court is Defendant's Motion to Dismiss the United States' Complaint on three grounds: (1) the action is untimely under either a Statute of Limitations or Laches; (2) revocation of naturalization pursuant to 8 U.S.C. § 1451(a) violates Substantive Due Process; and (3) the procedures of denaturalization violate Procedural Due Process. *See generally* Mot., Dkt. No. 18.

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12, a Complaint should be dismissed where it fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The standard for raising a plausible claim for relief is establish by the familiar Supreme Court cases *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and holds that "only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d. 1173, 1176 (9th Cir. 2021). The Court's task in the present Motion is to "'determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief.'" *Ariix*, 985 F.3d at 1114 (quoting *Iqbal*, 556 U.S. at 679). In doing so, the Court "'accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Id.* (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

### IV.  DISCUSSION

**A. Timeliness Pursuant to Statute of Limitations and/or Laches**

Defendant first seeks dismissal of the United States' denaturalization action claiming it is barred by either Statute of Limitations and/or the common law defense of Laches having been initiated over a decade after Defendant became a U.S. citizen and nearly three decades after the

3

United States accuses him of unlawfully entering the country. Mot. at 3–5.

1. <u>Statute of Limitations</u>

The Revocation of Naturalization statute does not contain a Statute of Limitations. *See generally* 8 U.S.C. § 1451. As such, Defendant argues it is appropriate for the Court to adopt either the five-year Statute of Limitations provided by 28 U.S.C. § 2462 or an analogous Statute of Limitations from Washington State law.

First, as Defendant concedes, application of the Statute of Limitations found in 28 U.S.C. § 2462 to actions under 8 U.S.C. § 1451(a) is barred by the Ninth Circuit's recent decision in *United States v. Phattey*, 943 F.3d 1277 (9th Cir. 2019). There, the Ninth Circuit held that civil denaturalization pursuant to 8 U.S.C. § 1451(a) is not a penalty, but, instead, intended merely "to remedy a past fraud by taking back a benefit to which an alien is not entitled." *Id.* at 1279. Accordingly, the Ninth Circuit held that the Statute of Limitations in 28 U.S.C. § 2462—which is a catch-all Statute of Limitations applicable to statutes imposing a penalty—does not apply in the denaturalization context. *Id.* at 1283.

Second, Defendant's argument that the Court should adopt a Washington State Statute of Limitations in the absence of an applicable federal Statute of Limitations pursuant to *Congress Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966) is also unavailing. In *UAW*, the Supreme Court determined that since Section 301 of the Labor Management Relations Act of 1947—which provides federal district court jurisdiction over collective bargaining contract disputes—contained no Statute of Limitations, it was appropriate to adopt an analogous Statute of Limitations from state law. *Id.* at 704–05. Thus, "[t]raditionally, when a federal statute creating a right of action

4

[does] not include a limitations period, courts [] apply the limitations period of the 'closest state analogue.'" *McGreevey v. PHH Mortg. Corp.*, 897 F.3d 1037, 1041 (9th Cir. 2018) (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 378 (2004)); *see also Oneida Cty., N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 240 (1985) ("In the absence of a controlling federal limitations period, the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies.").

These circumstances are inapplicable here, however, as in the present action the United States acts in its sovereign capacity to enforce federal law. As the Ninth Circuit has previously stated, when the government is acting "in its sovereign capacity to enforce significant public rights and interests . . . in the absence of a specific federal statute of limitation, the borrowing of the state statute of limitations [is] not intended by the Congress." *Donovan v. W. Coast Detective Agency, Inc.*, 748 F.2d 1341, 1343 (9th Cir. 1984); *see also Fed. Election Comm'n v. Lance,* 617 F.2d 365, 372 (5th Cir. 1980), *supplemented*, 635 F.2d 1132 (5th Cir. 1981) ("[S]tate statutes of limitation are not applicable to suits by a federal agency to enforce rights of the sovereign.").

This finding accords with federal policy regarding denaturalization proceedings. Defendant has failed to provide, and the Court has been unable to locate, a single case applying a state Statute of Limitations to a denaturalization action. Instead, every court that has addressed the applicability of a Statute of Limitations, albeit most often in the 28 U.S.C. § 2462 context, has held that Congress's lack of a Statute of Limitations in 8 U.S.C. § 1451(a) was intended to provide the United States leeway to bring such actions unburdened by a timeliness limitation. *See, e.g., United States v. Rahman*, No. 19-cv-1113-PB, 2020 WL 5236931, at *2 (D.N.H. Sept. 2, 2020)

(listing cases); *see also Costello v. United States*, 365 U.S. 265, 283 (1961) ("Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud."); *United States v. Wang*, 404 F. Supp. 2d 1155, 1158 (N.D. Cal. 2005) ("[C]ase law demonstrates conclusively that the Government may institute a denaturalization proceeding at any time regardless of how many years have passed since citizenship was granted to a defendant."). As the Ninth Circuit recognized in *Phattey*, "Congress's authority over naturalization stems from its power to 'establish an uniform Rule of Naturalization. The Supreme Court has recognized that this constitutional authority gives Congress the power to impose 'prerequisites to the acquisition of citizenship.'" 943 F.3d at 1281 (quoting U.S. CONST. art. I, § 8, cl. 4. and *Fedorenko v. United States*, 449 U.S. 490, 506 (1981)). As such, the Court finds adopting a state Statute of Limitations is inappropriate in this circumstance.

   2. <u>Laches</u>

Laches is an equitable defense "designed to prevent injury to the party asserting it, if such injury is caused by his opponent's delay." *State ex rel. Randall v. Snohomish Cty.*, 488 P.2d 511, 512 (Wash. 1971); *see also Tupper v. Tupper*, 478 P.3d 1132, 1141 (Wash. Ct. App. 2020) ("Laches is an equitable doctrine courts apply to protect a party from an unreasonable prejudicial delay.").

Directly addressing denaturalization proceedings, the Supreme Court in *Costello* stated that "[i]t has consistently been held in the lower courts that delay which might support a defense of laches in ordinary equitable proceedings between private litigants will not bar a denaturalization proceeding brought by the Government. . . . This Court has consistently adhered to this principle." 365 U.S. at 281 (internal citations removed).

Looking to the merits of Defendant's Laches claim, the Court finds he has failed to establish entitlement to the defense at this time. To invoke Laches, Defendant must establish (1) inexcusable delay and (2) prejudice resulting from that delay. *Tupper*, 478 P.3d at 1142 (citing *Auto. United Trades Org. v. State*, 286 P.3d 377, 379 (Wash. 2012)). As other Courts have noted, in keeping with the general consensus that the government should not be time barred from bringing denaturalization claims, the government has been permitted to initiate action after far greater delays than that experienced by Defendant here. *See United States v. Donkor*, No. 19-cv-07120, 2020 WL 7381948, at *3 (E.D.N.Y. Dec. 15, 2020) (listing actions initiated 12, 13, 20, 25, 28, 27, and 41 years after naturalization). *Costello*, for example, found Laches inapplicable after a 27 year delay between naturalization and initiation of suit. 365 U.S. at 281, 282–83. Defendant pleads no other malfeasance or prejudice outside of those generally associated with delay, which have routinely been denied. *See, e.g.*, *United States v. Dang*, 488 F.3d 1135, 1143–1144 (9th Cir. 2007); *United States v. Arango*, No. 09-cv-178, 2014 WL 7179578, at *14–*15 (D. Ariz. Dec. 17, 2014), *aff'd*, 686 F. App'x 489 (9th Cir. 2017); *United States v. Inocencio*, 215 F. Supp. 2d 1095, 1097 (D. Haw. 2002), *aff'd*, 328 F.3d 1207 (9th Cir. 2003); *see also United States v. Martinez*, No. 7:19-cv-345, 2020 WL 7381480, at *4–*5 (S.D. Tex. Dec. 15, 2020). Thus, Defendant has not established his entitlement to the defense at this time. *See United States v. Akhter*, No. 19-cv-7626, 2020 WL 7227289, at *5 (N.D. Ill. Dec. 8, 2020); *United States v. Becker*, No. 18-cv-2049, 2019 WL 6167396, at *4 (holding that full factual record may support defense after discovery but that Laches was not established at motion to dismiss phase).

Based on the foregoing, the Court will deny Defendant's Motion on the grounds of untimeliness.

### B. Substantive Due Process

Defendant argues that the United States' action should be dismissed because denaturalization violates Substantive Due Process. Mot. at 5–9. He mounts both a facial and as-applied challenge to the Revocation of Naturalization statute arguing that denaturalization prejudices fundamental rights to citizenship and ancillary benefits such as the right to vote and participate in elections.

#### 1. *Substantive Due Process Standard*

The Due Process clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The substantive component of this requirement "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). In other words, Substantive Due Process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal citation and quotations omitted).

As a threshold inquiry, one seeking Substantive Due Process protection must identify a constitutionally protected interest. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). Substantive Due Process provides "heightened protection against government interference with certain fundamental rights and liberty interests" and government actions affecting such fundamental rights are held to a more exacting, strict scrutiny standard. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *see also Magassa v. Wolf*, No. 19-cv-2036, 2020 WL 5544348, at *16

(W.D. Wash. Sept. 16, 2020). To be considered a "fundamental right," the identified right must be "'so rooted in the tradition and conscience of our people as to be ranked as fundamental' . . . reflect 'basic values implicit in the concept of ordered liberty' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Magassa*, 2020 WL 5544348, at *16 (quoting *Glucksberg*, 521 U.S. at 720–21). Once determined to affect a "fundamental right," government action is only sustainable where "'the infringement is narrowly tailored to serve a compelling state interest.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Where government action does not implicate a fundamental right, it is sustainable so long as it is "'rationally related to legitimate government interests.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 728). Thus, the Court conducts a two-part inquiry: (1) are the rights implicated by the Revocation of Naturalization statute "fundamental" and (2) does the statute then pass strict scrutiny or rational basis review?

    2. <u>Rights Implicated</u>

The Supreme Court has instructed that courts examining Substantive Due Process claims provide a "'careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (quoting *Flores*, 507 U.S. at 302); *see also Flores*, 507 U.S. at 302 (internal quotations and citations removed) ("Substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."). Thus, the Court must "formulate the asserted right by carefully consulting both the scope of the challenged regulation and the nature of Plaintiffs' allegations." *Stormans*, 794 F.3d at 1085; *see also Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (citing *Glucksberg*, 521 U.S. at 722) ("*Glucksberg* instructs courts to adopt a

narrow definition of the interest at stake.").

Neither party has presented the Court with a case examining the Substantive Due Process implications of denaturalization, nor has the Court found a similar challenge to its provisions. As such, the Court is unable to find a case previously construing the proper recitation of the rights implicated. Defendant insists they are rights previously determined "fundamental" such as the right to vote, participate in elections, to live together with family members, to be free of exile or banishment, and to citizenship itself. Mot. at 6–7. The United States, however, argues for a narrower conception, merely the right to hold citizenship fraudulently acquired, which it insists is no right at all. Resp. in Opp'n to Def.'s Mot. to Dismiss, Dkt. No. 19 at 9–10.

The Court is guided both by the statute itself and by the Ninth Circuit's recent decision in *Phattey*, 943 F.3d 1277. The Revocation of Naturalization statute states that it "shall be the duty" of the relevant United States attorneys to initiate denaturalization proceedings against any naturalized citizen who "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation" their citizenship. 8 U.S.C. § 1451(a). As the Ninth Circuit made clear in *Phattey*, the purpose of the statute is not punitive, but, instead, merely to "remedy a past fraud by taking back a benefit to which an alien is not entitled." 943 F.3d at 1279. Further, it does not "impos[e] a fine, penalty, or sentence of imprisonment—only the revocation of citizenship." *Id.* at 1281; *see also id.* at 1282–83. Thus, *Phattey* holds that courts should not confuse "the *purposes* of sanctions with their *effects*," or, in other words, not conflate the "incidental effect[s]" of denaturalization, including potentially deportation or loss of rights associated with citizenship, with the statute's actual result, mere cancellation of an ill-gotten benefit. *Id.* at 1283 (emphasis in original). As the Ninth Circuit offered in summation, "[w]hile [Mr.] Phattey may be correct that

10

denaturalization will have a deterrent effect as a practical matter, the purpose of revocation proceedings is to revoke a wrongfully obtained benefit, rather than deterrence." *Id.*

Based on this controlling precedent, the Court determines that 8 U.S.C. § 1451(a) cannot be said to stretch so far as to implicate fundamental rights. Instead, this Court must look only at the most immediately effected rights and implications, including merely the cancellation of an ill-gotten benefit. This does not implicate fundamental rights.

3. *Rational Basis Review*

Having determined that fundamental rights are not implicated by denaturalization, the statute need meet only a rational basis review. As this Court recognized *supra*, the exercise of denaturalization stems directly from the Constitution's delegation of power to Congress to "establish an uniform Rule of Naturalization[,]" which certainly represents a "legitimate government interest." *See supra* at 6 (quoting U.S. CONST. art. I, § 8, cl. 4.). Removal of an ill-gotten naturalization benefit is rationally related to this interest. *Fedorenko*, 449 U.S. at 506 ("[O]ur cases have also recognized that there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside."); *Costello*, 365 U.S. at 283–84 ("Depriving [Mr. Costello] of his fraudulently acquired privilege, even after the lapse of many years, is not so unreasonable as to constitute a denial of due process."). As such, the Court determines that the Revocation of Naturalization statute passes Substantive Due Process review and the Court will deny Defendant's Motion on this claim.

### C. Procedural Due Process

Defendant argues that the United States' Complaint should be dismissed because the Revocation of Naturalization statute lacks sufficient procedural safeguards in violation of the Procedural Due Process doctrine. Mot. at 9–15. According to Defendant, the statute risks denial of significant private interests due to erroneous outcomes based on the lack of protections often afforded in the criminal context, including lack of a Constitutional right to a jury trial, right to view exculpatory evidence, confrontation of witnesses, appointment of counsel, and protections against self-incrimination.

#### 1. *Procedural Due Process Standard*

The procedural element of the Due Process clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). At the same time, Due Process "is a flexible concept, and the procedural protections it demands are molded by the relevant factual context." *Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1*, LLC, 893 F.3d 1136, 1150 (9th Cir. 2018). Thus, the "fundamental requirement" of Due Process is merely "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" before an individual is deprived of a property or liberty interest. *Eldridge*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In determining whether a particular process is sufficient, the Court turns to the familiar analysis outlined in *Mathews v. Eldridge*, which requires balancing of three elements:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335; *Zerezghi v. United States Citizenship & Immigration Servs.*, 955 F.3d 802, 810 (9th Cir. 2020); *Magassa*, 2020 WL 5544348, at *13.

   2.   *Application*

Surprisingly few cases concerning the Revocation of Naturalization statute have addressed its procedural sufficiency by applying the *Eldridge* standard. The Court has found only one relevant reference. In *United States v. Schellong*, the Seventh Circuit rejected a defendant's argument that he was entitled to a trial by jury citing its decision in *United States v. Walus*, 616 F.2d 283 (7th Cir. 1980), and the Supreme Court's decision in *Luria v. United States*, 231 U.S. 9 (1913), finding no right to a jury trial in denaturalization proceedings as they are suits brought in equity. 717 F.2d 329, 336 (7th Cir. 1983). The defendant sought alternative grounds other than the Seventh Amendment to require a jury trial but, citing *Eldridge*, the Seventh Circuit rejected the argument stating "[t]hough revocation of citizenship is a severe sanction, due process was satisfied by a fair trial before an impartial decision-maker." *Id.* at 336. Thus, that Court did not engage in a full *Eldridge* analysis and its conclusion only addressed one specific procedural protection.

While the relevant case law is comparatively thin, the Court notes that the Supreme Court has long recognized Congress's ability to authorize denaturalization proceedings, *see, e.g. Johannessen v. United States*, 225 U.S. 227, 236 (1912) ("[i]t does not follow that Congress may not authorize a direct attack upon certificates of citizenship in an independent proceeding"), and its consistent statements that doing so does not violate Due Process, *see Costello*, 365 U.S. at 283–84 ("Depriving [Mr. Costello] of his fraudulently acquired privilege, even after the lapse of many years, is not so unreasonable as to constitute a denial of due process.").

Turning to the *Eldridge* factors, the Court finds that the Revocation of Naturalization statute contains sufficient safeguards. First, the Court recognizes important interests on either side; both with a naturalized citizen's rights to the benefits of citizenship and the United States' interest in protecting the propriety of the naturalization process. Both parties have provided a slew of citations to Supreme Court precedent expounding on the importance of both interests. This Court is guided by the conclusion dictated previously by *Phattey* that the consequence of 8 U.S.C. § 1451 is the mere revocation of an ill-gotten benefit and does not risk fundamental rights. *See supra* at 10–11.

The Court finds that defendants in revocation of naturalization proceedings are provided with numerous procedural protections. The Supreme Court has established a "heavy burden of proof" in denaturalization proceedings, including that "evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt." *Fedorenko*, 449 U.S. at 505 (internal quotations and citations removed). Courts have equated this burden with the proof-beyond-a-reasonable-doubt standard applicable in criminal cases. *See Klapprott v. United States*, 335 U.S. 601, 612 (1949) ("This burden is substantially identical with that required in criminal cases-proof beyond a reasonable doubt."); *United States v. Parvez Manzoor Khan*, No. 17-cv-965, 2020 WL 1650599, at *23 (M.D. Fla. Apr. 3, 2020)

The statute itself contains additional procedural protections. The government is required to initiate denaturalization proceedings in federal court, which encompasses all the procedural protections afforded therein by the Federal Rules of Civil Procedure including entitlement to discovery (which allows for the taking of depositions) and an impartial judge. 8 U.S.C. § 1451(a). The statute also affords protections above the civil suit standard, including a special notification

requirement and the filing of an affidavit showing good cause. *Id.* Thus, the Court finds that defendants faced with denaturalization have ample opportunity to be heard and contest the United States' claims.

Further, Defendant's insistence that denaturalization proceedings are deficient in the absence of procedural protections afforded in the criminal context is also unavailing. The Supreme Court, for example, long ago rejected the contention that such protections, in the form of a trial by jury, are required in such proceedings. *Luria*, 231 U.S. at 27. Other criminal rights have analogs in the civil context. As stated previously, the conception of Due Process is "flexible" and does not mandate specific procedural protections. Given, as the Ninth Circuit has made clear, that denaturalization risks only loss of an ill-gotten gain in the civil context, the Court cannot say rights normally afforded in the criminal context are required.

As previously noted, the Constitution provides the power to determine the requirements for naturalization directly to Congress. *See* U.S. CONST. art. I, § 8, cl. 4. Pursuant to that power, Congress enacted 8 U.S.C. § 1451(a), including the procedural protections it saw fit. Thus, the Government's interest in protecting that process is strong.

Based on a balancing of the foregoing, the Court finds that the procedural safeguards adequate and will deny Defendant's Motion on this claim.

## V.   CONCLUSION

Based on the foregoing, the Court hereby DENIES Defendant's Motion to Dismiss.

DATED this 18th day of February, 2021.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE